IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00008-CV

 

In the
Matter of M.P., a Child

                                                                      

 

 

 

 



From the 272nd District Court

Brazos County, Texas

Trial Court No. 337-J-04

 



LEAD Opinion



 








          A jury found that M.P. had engaged in
delinquent conduct by committing two counts of indecency with a child and one
count of aggravated sexual assault of a child.  The court committed M.P. to the
Texas Youth Commission without a determinate sentence.  M.P. contends in his
sole issue that the court violated his right of confrontation under the federal
and state constitutions, and particularly under Crawford v. Washington,
by admitting during the disposition phase a written report prepared by a
juvenile probation officer which contains hearsay.

          During the disposition phase, the State
offered a Juvenile Court Investigation Report prepared by M.P.’s juvenile
probation officer, Sha’Vonne Brown-Lewis.  The report contains general
background information, M.P.’s referral history, the history of services
provided by the juvenile department, a narrative of “impressions” reviewing
M.P.’s history and briefly stating the probation officer’s recommendation that
M.P. be committed to TYC, and a concluding section reviewing the dispositional
alternatives and providing a list of reasons TYC is the appropriate
disposition.  

          The report is supported by a
collection of “over thirty” disciplinary referrals M.P. has received at
different schools.[1] 
These referrals largely consist of brief narratives prepared by the teachers
who made the referrals describing the conduct and the actions taken.  Some
referrals include witness statements.  Others include documentary evidence.

          M.P. objected when the State offered
the report in evidence on the basis that “information both contained in the
report and, frankly, the totality of Ms. Brown’s testimony” violate Crawford
v. Washington and the confrontation clauses of the federal and state
constitutions.  Counsel specifically identified Brown-Lewis’s references to
M.P.’s various referrals as a matter of concern.

          After taking the matter under
advisement, the court advised the parties that it would overrule the objection
based on the reasoning of Indiana’s Fourth District Court of Appeals in C.C.
v. State.  826 N.E.2d 106 (Ind. Ct. App. 2005).  The court followed the
recommendation of Brown-Lewis and committed M.P. to TYC.

Preservation

          The State contends that M.P. did not
properly preserve this issue for appellate review because he failed to identify
for the trial court the particular portions of the report which he considered
to be inadmissible.

          To preserve a complaint for appellate
review, Rule of Evidence 103(a)(1) requires “a timely objection . . . stating
the specific ground of objection, if the specific ground was not apparent from
the context.”  Tex. R. Evid. 103(a)(1);
see also Tex. R. App. P. 33.1(a)(1)(A). 
Stated another way, a “timely” and “specific” objection is required.  See,
e.g., Kerr-McGee Corp. v. Helton, 133 S.W.3d 245, 251 (Tex. 2004); Residential
Dynamics, LLC v. Loveless, 186 S.W.3d 192, 195 (Tex. App.—Fort Worth 2006,
no pet.).

          Before and since the adoption of the
Rules of Evidence in 1982,[2]
Texas courts in civil appeals have held, “A general objection to evidence as a
whole, whether it be oral or
documentary, which does not point out specifically the portion objected to, is
properly overruled if any part of it is admissible.”  Brown & Root, Inc.
v. Haddad, 142 Tex. 624, 180 S.W.2d 339, 341 (1944) (quoted by Speier v.
 Webster College, 616 S.W.2d 617, 619 (Tex. 1981)); accord In re K.C.P.,
142 S.W.3d 574, 583 (Tex. App.—Texarkana 2004, no pet.); Leaird’s, Inc. v.
Wrangler, Inc., 31 S.W.3d 688, 692 (Tex. App.—Waco 2000, pet. denied).[3] 
This principle is a particular application of the requirement that an objection
be “specific.”

          However, as indicated by the plain
language of Rule 103(a)(1), the specificity of an objection is less important
when the basis for the objection is “apparent from the context.”  Tex. R. Evid. 103(a)(1).  Thus, Texas courts have found issues adequately preserved for appellate review even when the
objections at issue did not meet the stringent requirements of Brown &
Root and its progeny.  See, e.g., In re E.A.K., 192 S.W.3d 133, 147
n.24 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); K.C.P., 142
S.W.3d at 578-79; All Saints Episcopal Hosp. v. M.S., 791 S.W.2d 321,
323 (Tex. App.—Fort Worth 1990), writ granted w.r.m., 801 S.W.2d 528 (Tex. 1991) (per curiam).

          Here, the comments of the prosecutor,
defense counsel, and the trial court all indicate that the basis for M.P.’s
objection was “apparent from the context.”  See Tex. R. Evid. 103(a)(1); E.A.K., 192 S.W.3d at 147
n.24; K.C.P., 142 S.W.3d at 578-79; All Saints Episcopal Hosp.,
791 S.W.2d at 323.  Therefore, we reject the State’s contention that M.P.
failed to preserve this issue for appellate review.

Due Process in Juvenile Proceedings

          Juvenile delinquency proceedings must provide constitutionally mandated
due process of law.  In re Gault, 387 U.S. 1, 13, 87 S. Ct. 1428, 1436,
18 L. Ed. 2d 527 (1967); L.G.R. v. State, 724 S.W.2d 775, 776 (Tex. 1987); Hidalgo v. State, 983 S.W.2d 746, 751 (Tex. Crim. App. 1999); In
re J.S.S., 20 S.W.3d 837, 841-42 (Tex. App.—El Paso 2000, pet. denied). 
However, the process due a juvenile offender does not equate to that due an
adult offender in every instance.  See Gault, 387 U.S. at 14, 87 S. Ct. at 1436; In re J.R.R., 696 S.W.2d 382, 383-84 (Tex. 1985) (per curiam);
 Hidalgo, 983 S.W.2d at 751-52; J.S.S., 20 S.W.3d at 842.

          The Court of Criminal Appeals has adopted
a balancing test it distilled from eight foundational decisions of the Supreme
Court of the United States “to determine whether and to what degree” a
particular constitutional protection
must be afforded a juvenile.[4]  Lanes
v. State, 767 S.W.2d 789, 794 (Tex. Crim. App. 1989); accord Hidalgo, 983 S.W.2d at 751.  This test requires an appellate court to “balance[ ] the
function that [the asserted] constitutional or procedural right serve[s]
against its impact or degree of impairment on the unique processes of the
juvenile court.”  Lanes, 767 S.W.2d at 794; accord Hidalgo, 983
S.W.2d at 751-52; J.S.S., 20 S.W.3d at 842-44; S.D.G. v. State,
936 S.W.2d 371, 378-79 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

          The Court recognized in Hidalgo that the justifications for affording fewer constitutional protections to
juveniles than adults have lessened in recent years as the juvenile justice
system has become more punitive than rehabilitative.

          In adopting this balancing test this
Court also announced a desire to “dispel the antiquated and unrealistic
resistance to procedural safeguards” in the juvenile court system.  We observed
that due to the scarcity of treatment programs, professional training, and
financial resources the juvenile system had become more punitive than
rehabilitative.  Rather than ignore these realities we chose to balance the “aspirations
of the juvenile court and the grim realities of the system.”

 

          Recent amendments to the Juvenile
Justice Code change[d] juvenile adjudication and punishment, causing the “grim
realities” to be even more salient.  As this Court recently recognized in Blake
v. State, 971 S.W.2d 451, 460 (Tex. Crim. App. 1998), juveniles now face
consequences similar to those faced by adults.  Most apparent is the fact
juveniles may now be subject to a forty-year term of imprisonment.  Blake
recognized some of the legislative changes making the juvenile system more
punitive than rehabilitative:

 

[T]he legislature expanded the definitions of
delinquent conduct, expanded the list of felony offenses that authorize
criminal proceedings for juveniles over the age of fourteen, authorized
confinement in the Texas Department of Criminal Justice for various grades of
felony and habitual felony conduct, categorized certain adjudications as “final
felony convictions” that can be used as enhancements for repeat offenders,
removed provisions forbidding the maintenance of centralized photograph and
fingerprint records, repealed laws about sealing and destruction of juvenile
records, and mandated the use of the Texas Rules of Criminal Evidence and the
evidentiary provisions of Chapter 38 of the Code of Criminal Procedure instead
of their civil counterparts for judicial proceedings involving juveniles.

 

Blake,
971 S.W.2d at 460 n.28.  These recent legislative changes continue to erode the
original justifications for denying juveniles the same procedural protections
as adults.

 

Hidalgo,
983 S.W.2d at 751-52 (other citations and footnote omitted).

          Accordingly, we must determine whether
the disposition phase of a juvenile delinquency proceeding is the type of
proceeding to which the Sixth Amendment right of confrontation[5]
applies.   If so, then we must examine the impact the application of that right
would have on the juvenile justice system.  See id. at 752; J.S.S.,
20 S.W.3d at 842.

Sixth Amendment Right of Confrontation

          The right of confrontation is one of
several rights provided by the Sixth Amendment:

          In all criminal prosecutions, the
accused shall enjoy the right to a speedy and public trial, by an impartial
jury of the State and district wherein the crime shall have been committed,
which district shall have been previously ascertained by law, and to be
informed of the nature and cause of the accusation; to be confronted with the
witnesses against him; to have compulsory process for obtaining witnesses in
his favor, and to have the Assistance of Counsel for his defence.

 

U.S. Const. amend. VI.

          In Ohio v. Roberts, the Supreme
Court of the United States held that the admission of hearsay evidence did not
violate a defendant’s Sixth Amendment right of confrontation if the declarant
was unavailable to testify and the statement bore adequate indicia of
reliability either because it: (1) fell within a firmly rooted hearsay exception,
or (2) was shown to have particularized guarantees of trustworthiness.  448 U.S. 56, 66, 100 S. Ct. 2531, 2539, 65 L. Ed. 2d 597 (1980).  Twenty-four years later, the Court dramatically
changed its interpretation of the right of confrontation in Crawford v.
Washington.  541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). 
There, the Court discarded the indicia-of-reliability test of Roberts,
at least for “testimonial” evidence, and held that the admission of hearsay
violates a defendant’s Sixth Amendment right of confrontation unless the
declarant is unavailable and the defendant has had a prior opportunity for
cross-examination.  Id. at 68, 124 S. Ct. at 1374.

          Because of the sea change effected by Crawford,
appellate courts have been called upon with some frequency to construe Crawford
and to determine its application to particular issues.  See Robert Wm.
Best, To Be or Not To Be Testimonial?  That is the Question: 2004 Developments
in the Sixth Amendment, 2005 Army
Law. 65, 87 (2005) (“Every week, at least
twenty opinions are released that make a citation to Crawford.”).  Before
Crawford, little attention was paid to the issue of whether the Sixth
Amendment right of confrontation even applied to the punishment phase of
trial.  Since Crawford, this issue has been addressed by a multitude of
state and federal courts.

          At first blush, it would
seem that this question could be promptly resolved by determining whether the
punishment phase of trial is part of a “criminal prosecution,” because the
Sixth Amendment (and ostensibly each of its guarantees), on its face, applies
to “all criminal prosecutions.”  However, the divergence of appellate decisions
on this issue leads to the conclusion that the guarantees of the Sixth
Amendment do not apply with equal force at every stage of a criminal prosecution.

          For example, in Mempa
v. Rhay the Supreme Court held that a criminal defendant has a Sixth
Amendment right to counsel during the punishment phase because this right
applies “at every stage of a criminal proceeding where substantial rights of a
criminal accused may be affected.”  389 U.S. 128, 134, 88 S. Ct. 254, 256-57,
19 L. Ed. 2d 336 (1967).

          In Estelle v. Smith,
the Court construed the Sixth Amendment right to counsel quite broadly, beyond the
trial on the merits.  451 U.S. 454, 470, 101 S. Ct. 1866, 1876, 68 L. Ed. 2d
359 (1981).

It is central to [the Sixth
Amendment] principle that in addition to counsel’s presence at trial, the
accused is guaranteed that he need not stand alone against the State at any
stage of the prosecution, formal or informal, in court or out, where counsel’s
absence might derogate from the accused’s right to a fair trial.

 

Id. (quoting United States v. Wade, 388 U.S. 218, 226, 87 S. Ct. 1926, 1932, 18 L. Ed. 2d 1149 (1967)).

          Conversely, the Court has
construed the Sixth Amendment right to jury trial more narrowly.  Thus, the
Court has held that there is no right to jury trial for a petty offense,
defined as one in which the punishment assessed is no more than six months.  Lewis
v. United States, 518 U.S. 322, 325-26, 116 S. Ct. 2163, 2166-67, 135 L.
Ed. 2d 590 (1996) (citing Duncan v. Louisiana, 391 U.S. 145, 159, 88 S. Ct. 1444, 1453, 20 L. Ed. 2d 491 (1968)).

          The Court has also held on
several occasions that there is no Sixth Amendment right to have a jury assess
punishment.  See, e.g., Morgan v. Illinois, 504 U.S. 719, 725-26, 112 S. Ct. 2222, 2228, 119 L. Ed. 2d 492 (1992); Spaziano v. Florida, 468 U.S. 447, 464, 104 S. Ct. 3154, 3164, 82 L. Ed. 2d 340 (1984); accord Barrow v. State, 207
S.W.3d 377, 380 (Tex. Crim. App. 2006).

          In Apprendi v. New
Jersey and its progeny however, the Court has held that the Sixth Amendment
right to jury trial does extend to the punishment phase insofar as the State
may seek
imposition of a sentence
on the basis of findings beyond those “reflected in the jury verdict or
admitted by the defendant.”  United States v. Booker, 543 U.S. 220, 232, 125 S. Ct. 738, 749, 160 L. Ed. 2d 621 (2005) (quoting Blakely v. Washington,
542 U.S. 296, 303, 124 S. Ct. 2531, 2537, 159 L. Ed. 2d 403 (2004)); see
also Ring v. Arizona, 536 U.S. 584, 602, 122 S. Ct. 2428, 2439-40, 153 L.
Ed. 2d 556 (2002); Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000).

          The Court has also extended
at least a sub-part of a defendant’s Sixth Amendment right of confrontation to
the punishment phase.  “One of the most basic of the rights
guaranteed by the Confrontation Clause is the accused’s right to be present in
the courtroom at every stage of his trial.”  Illinois v. Allen,
397 U.S. 337, 338, 90 S. Ct. 1057, 1058, 25 L. Ed. 2d 353 (1970) (emphasis
added) (citing Lewis v. United States, 146 U.S. 370, 374-75, 13 S. Ct.
136, 137, 36 L. Ed. 1011 (1892)) (“Out of abundant tenderness for the right
secured to the accused by our constitution to be confronted by the witnesses
against him, and to be heard by himself or counsel, our court has gone a step
further, and held that it must be shown by the record that the accused was
present in court pending the trial.”);[6]
accord Garcia v. State, 149 S.W.3d 135, 140 (Tex. Crim. App. 2004) (“One
of the most basic of the rights guaranteed by the Confrontation Clause is the
accused’s right to be present in the courtroom during his trial.”); Baltierra
v. State, 586 S.W.2d 553, 556 (Tex. Crim. App. 1979) (“within the scope of
the right of confrontation is the absolute requirement that a criminal
defendant who is threatened with loss of liberty be physically present at all
phases of proceedings against him”) (emphasis added); Kessel v. State,
161 S.W.3d 40, 45 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d), cert.
denied, ___ U.S. ___, 126 S. Ct. 484, 163 L. Ed. 2d 369 (2005) (“One of the
most basic rights guaranteed by the Confrontation Clause is the defendant’s
right to be present in the courtroom at every stage of his trial.”); In re
C.T.C., 2 S.W.3d 407, 410 (Tex. App.—San Antonio 1999, no pet.) (juvenile “has
the same constitutional right to be present at the proceedings as a criminal
defendant has”).

          Thus, in Kessel the
Fourteenth Court of Appeals reversed a defendant’s punishment where the trial
court excluded the defendant from the courtroom during the punishment phase.  See
Kessel, 161 S.W.3d at 47-49.  And in Garcia, the Court of Criminal
Appeals reversed the defendant’s conviction because he did not speak English
and no interpreter had been appointed to translate the proceedings for him.  See
Garcia, 149 S.W.3d at 145-46; see also Baltierra, 586 S.W.2d at 559;
Miller v. State, 177 S.W.3d 1, 8 (Tex. App.—Houston [1st Dist.] 2004, no
pet.).

          From these decisions we
conclude that the Sixth Amendment right of confrontation applies in some, but
not all, respects to the punishment phase of an adult criminal trial.

 

 

Texas Decisions

          No Texas court has
expressly determined whether the Sixth Amendment right of confrontation applies
during the punishment phase of an adult criminal trial or the disposition phase
of a juvenile delinquency proceeding.  Cf. Young v. State, No. 02-04-501-CR, 2005 Tex. App. LEXIS 9498, at *3-4 (Tex. App.—Fort Worth Nov. 10, 2005, no pet.) (not designated for publication) (“We believe
the right to counsel applies even at punishment in a bench trial.  And until a
higher court instructs us to the contrary, we shall apply the Sixth Amendment
in its entirety, even to bench trials.”).  Rather, because the Court of
Criminal Appeals and six intermediate courts of appeals have addressed the
merits of claims that the right of confrontation was violated at punishment (or
have found those claims waived by a failure to object), these courts have at
least implicitly concluded that there is a Sixth Amendment right of
confrontation at punishment.[7]

          In similar fashion, the Eastland Court
of Appeals has implicitly concluded that the Sixth Amendment right of confrontation
applies during a hearing on a motion to modify a juvenile disposition when that
court addressed the merits of the appellant’s confrontation complaint.  See
In re J.R.L.G., No. 11-05-002-CV, 2006 Tex. App. LEXIS 3344, at *2-6 (Tex. App.—Eastland Apr. 27, 2006, no pet.) (mem. op.).

          Conversely, this Court and three
others have concluded that a juvenile has no right of confrontation at a
discretionary transfer hearing.  See In re S.M., 207 S.W.3d 421, 425
(Tex. App.—Fort Worth 2006, pet. filed); In re D.L., 198 S.W.3d 228,
229-30 (Tex. App.—San Antonio 2006, pet. denied); In re T.D.B., No.
10-05-015-CV, 2006 Tex. App. LEXIS  1491, at *3 (Tex. App.—Waco Feb. 22, 2006,
no pet.) (mem. op.); In re C.D.T., 98 S.W.3d 280, 283 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

          And two Texas courts have held that a
defendant in a community-supervision revocation proceeding has only a limited
right of confrontation under the Due Process Clause of the Fourteenth Amendment
rather than under the Sixth Amendment.  See Diaz v. State, 172 S.W.3d 668,
669-72 (Tex. App.—San Antonio 2005, no pet.) (citing Gagnon v. Scarpelli,
411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); Morrissey v. Brewer,
408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)) (other citations omitted);
Smart v. State, 153 S.W.3d 118, 120-21 (Tex. App.—Beaumont, pet. ref’d)
(same), cert. denied, ___ U.S. ___, 126 S. Ct. 663, 163 L. Ed. 2d 527
(2005).

Decisions in Other Jurisdictions

          The federal courts of
appeals have virtually unanimously concluded post-Crawford that there is
no right of confrontation at sentencing.[8] 
Courts in at least eleven other states have likewise held that there is no
right of confrontation at sentencing.[9] 
Courts in two states have held in
similar fashion that a juvenile has no right of confrontation during the
disposition phase of trial.  C.C. v. State, 826 N.E.2d 106, 111 (Ind. Ct. App. 2005); In re Romeo C., 40 Cal. Rptr. 2d 85, 89-91 (Cal. Ct. App. 1995). 
But the high court of only one state has expressly
held that the Sixth Amendment right of confrontation applies at sentencing.  Rodgers
v. State, No. SC04-1425, 2006 Fla. LEXIS 2542, at *12-13 (Fla. Oct. 26,
2006) (per curiam).

          In some states, courts have not taken
definitive positions.[10]  By
comparison, the Arizona Supreme Court has recognized
a limited right of confrontation at sentencing.  State v. McGill,
140 P.3d 930, 942 (Ariz. 2006) (Confrontation Clause applies to hearsay offered
at punishment to prove an aggravating factor but not to hearsay offered in
rebuttal of mitigating evidence); see also Dayton v. State, 2005 Alas.
App. LEXIS 147, at *8 (Alaska Ct. App. Sept. 8, 2005)
(“a judge who is making findings of fact at sentencing proceedings can rely on
out-of-court statements described in the pre-sentence report for proof of the
matters asserted, unless the defendant offers a testimonial denial of those
statements and submits to cross-examination, in which case the State must
support its assertions with live testimony.”).

Sixth Amendment Summary

          There is an indisputable
Sixth Amendment right to counsel during the punishment phase and an
indisputable right to be present during the punishment phase, the latter of
which is a part of the Sixth Amendment right of confrontation.  However, there
is only a limited Sixth Amendment right to a jury during the punishment phase
under Apprendi at its progeny.  And most state and federal courts which
have directly addressed the issue have concluded that there is no Sixth
Amendment right of confrontation at sentencing.

          Nevertheless, the Court of
Criminal Appeals and a significant number of the intermediate appellate courts
in Texas have at least implicitly concluded that a defendant has a Sixth
Amendment right of confrontation at sentencing by addressing the merits of such
claims or concluding that such claims were waived.

          Here, because this is a
juvenile proceeding, we need not determine the precise parameters of the Sixth
Amendment right of confrontation during the punishment phase of an adult
criminal trial.  We do conclude, however, that at a minimum an adult criminal
defendant has a constitutional right of confrontation at sentencing: (1) in
cases in which the State seeks imposition of a sentence on the basis of findings beyond those “reflected
in the jury verdict or admitted by the defendant”; see Booker, 543 U.S. at
232, 125 S. Ct. at 749; McGill, 140 P.3d at 942; and
(2) whenever the State calls a witness to testify at punishment.  See Allen,
397 U.S. at 338, 90 S. Ct. at 1058; Garcia, 149 S.W.3d at 140; Baltierra,
586 S.W.2d at 556; Kessel, 161 S.W.3d at 45; C.T.C., 2 S.W.3d at
410.

 

 

Impact on Juvenile Proceedings

          Having determined that there is at
least a limited Sixth Amendment right of confrontation during
the punishment phase of an adult criminal trial, we now examine the impact
the application of that right would have on the juvenile justice system.  See
 Hidalgo, 983 S.W.2d at 752; J.S.S., 20 S.W.3d at 842.

          The Texas juvenile justice system requires courts to balance the
need for public safety and punishment for criminal conduct with the medical,
educational and rehabilitative needs and the best interests of the juvenile
delinquent, while simultaneously ensuring that his “constitutional and other
legal rights” are protected.  See Tex.
Fam. Code Ann. § 51.01 (Vernon 2002).  Among other purposes, the
juvenile justice system is supposed to:

·                   
provide treatment, training,
and rehabilitation that emphasizes the accountability and responsibility of
both the parent and the child for the child’s conduct;

 

·                   
provide for the care, the
protection, and the wholesome moral, mental, and physical development of
children coming within its provisions; and

 

·                   
achieve the foregoing
purposes in a family environment whenever possible, separating the child from
the child’s parents only when necessary for the child’s welfare or in the
interest of public safety and when a child is removed from the child’s family,
to give the child the care that should be provided by parents.

 

Id.
§ 51.01(2)(C), (3), (5).

          There appears to be only one potential
fact issue to be determined during the disposition phase of a juvenile
proceeding which may permit a disposition more severe than authorized by
findings “reflected in the jury verdict [from the
adjudication phase].”[11]
 See Booker, 543 U.S. at 232, 125 S. Ct. at 749.  That issue is whether
the juvenile engaged in “habitual felony conduct.”  See Tex. Fam. Code Ann. § 54.04(m) (Vernon Supp. 2006).[12]

          Nevertheless, under Apprendi
and its progeny, a finding that a juvenile engaged in “habitual felony conduct”
is nothing more than a finding that the juvenile has been previously and
sequentially adjudicated of at least two prior felonies.  Such a finding does
not invoke the Sixth Amendment right to jury trial recognized in Apprendi. 
See 530 U.S. at 490, 120 S. Ct. at 2362-63 (“Other than the fact of a
prior conviction, any fact that increases the penalty for a crime beyond
the prescribed statutory maximum must be submitted to a jury, and proved beyond
a reasonable doubt.”) (emphasis added).

          Because there are no
findings to be made in the disposition phase which would invoke the Sixth
Amendment right to jury trial recognized by Apprendi and its progeny and
because of the importance of effectively addressing the medical, educational and rehabilitative needs
and the best interests of the juvenile delinquent as recognized by the Juvenile
Justice Code, we conclude that a juvenile has no Sixth Amendment right of
confrontation during the disposition phase.  See C.C., 826 N.E.2d at 111;
Romeo C., 40 Cal. Rptr. 2d at 89-91.  Such a conclusion preserves the
flexibility inherent in the design of the juvenile justice system for ensuring
that the needs of each child are adequately addressed in the disposition phase.

          Nevertheless, the Juvenile Justice
Code expressly recognizes that a juvenile must be provided a “fair hearing” and
his or her “constitutional and other legal rights” must be “recognized and
enforced.”  Tex. Fam. Code Ann. §
51.01(6).  Therefore, we hold that a juvenile has a limited right of
confrontation under the Due Process Clause of the Fourteenth Amendment rather
than under the Sixth Amendment.  Cf. Gagnon, 411 U.S. at 782-86, 93 S. Ct. at 1760-62; Morrissey, 408 U.S. at 487-89, 92 S. Ct. at 2603-04;
Diaz, 172 S.W.3d at 670-71; Smart, 153 S.W.3d at 121.

Due Process Right of Confrontation

          The Supreme Court in Morrissey explained
that this “process should be flexible enough to consider evidence including
letters, affidavits, and other material that would not be admissible in an
adversary criminal trial.”  408 U.S. at 489, 92 S. Ct. at 2604; accord Diaz,
172 S.W.3d at 670-71; Smart, 153 S.W.3d at 121.  The Court discussed
this due process right of confrontation in more detail in Gagnon.

An additional comment is warranted with respect
to the rights to present witnesses and to confront and cross-examine adverse
witnesses.  Petitioner’s greatest concern is with the difficulty and expense of
procuring witnesses from perhaps thousands of miles away.  While in some cases
there is simply no adequate alternative to live testimony, we emphasize that we
did not in Morrissey intend to prohibit use where appropriate of the
conventional substitutes for live testimony, including affidavits, depositions,
and documentary evidence.  Nor did we intend to foreclose the States from
holding both the preliminary and the final hearings at the place of violation
or from developing other creative solutions to the practical difficulties of
the Morrissey requirements.

 

411 U.S. at 782 n.5, 93 S. Ct. at 1760 n.5; accord
Diaz, 172 S.W.3d at 671.

          Therefore, the Supreme Court’s
jurisprudence regarding the Sixth Amendment right of confrontation, and
particularly Crawford, has no application to the disposition phase of a
juvenile delinquency proceeding.  See Diaz, 172 S.W.3d at 672; Smart,
153 S.W.3d at 120-21.  Instead, the due process right of confrontation
described in Gagnon applies.  Id.; see also People v. Johnson,
18 Cal. Rptr. 3d 230, 232 (Cal. Ct. App. 2004); People v. Turley, 109
P.3d 1025, 1026 (Colo. Ct. App. 2004); Jenkins v. State, 2004 Del. LEXIS 549, at *8-9 (Del. 2004) (not designated for publication); Young v. United States, 863 A.2d 804, 807-08 (D.C. 2004); Peters v. State, 919 So. 2d
624, 626-28 (Fla. Ct. App. 2006, review granted); State v. Rose, 2006 WL
1459803, at *4 (Idaho Ct. App. 2006, review granted); Reyes v. State,
853 N.E.2d 1278, 1281-83 (Ind. Ct. App. 2006); State v. Abd-Rahmaan, 111
P.3d 1157, 1160-61 (Wash. 2005).

          Under the due process right of
confrontation described in Morrissey and Gagnon, a defendant has “the
right to confront and cross-examine adverse witnesses (unless the hearing
officer specifically finds good cause for not allowing confrontation).”  Gagnon,
411 U.S. at 786, 93 S. Ct. at 1762 (quoting Morrissey, 408 U.S. at 489, 92 S. Ct. at 2604); accord Ex parte Taylor, 957 S.W.2d 43, 44 (Tex. Crim. App.
1997) (per curiam); Diaz, 172 S.W.3d at 670; Smart, 153 S.W.3d at
121.  Thus, the trial court must weigh the defendant’s interest in confronting
and cross-examining an adverse witness against the State’s interest in not
having to produce that witness, “particularly focusing on the indicia of
reliability of the hearsay offered.”  Taylor, 957 S.W.2d at 46 (citing United
States v. McCormick, 54 F.3d 214 (5th Cir. 1995)) (other citations
omitted).  This determination must be made on a case-by-case basis.  Taylor, 957 S.W.2d at 46; see also Gagnon, 411 U.S. at 788-91, 93 S. Ct. at 1763-64; United States v. Bell, 785 F.2d 640, 642-43 (8th Cir. 1986); Downie
v. Klincar, 759 F. Supp. 425, 429 (N.D. Ill. 1991).

Texas
Constitution

          M.P. also contends that the admission
of the juvenile probation officer’s report violated his right of confrontation
under article I, section 10 of the Texas Constitution.

          Article I, section 10 provides in
pertinent part, “In all criminal prosecutions the accused   .  .  .   shall be
confronted by the witnesses against him and shall have compulsory process for
obtaining witnesses in his favor.”  Tex.
Const. art. I, § 10.

          Although M.P. observes some textual
differences between this provision and the Sixth Amendment, he does not cite
any authority which directly supports a proposition that the right of
confrontation under the Texas Constitution varies in any appreciable manner
from that provided in the Sixth Amendment.  Rather, Texas courts have
consistently interpreted these provisions as providing the same protection.  See,
e.g., Ex parte Johnson, 654 S.W.2d 415, 421 (Tex. 1983) (orig. proceeding);
Lagrone v. State, 942 S.W.2d 602, 614 (Tex. Crim. App. 1997); Gomez
v. State, 183 S.W.3d 86, 91 (Tex. App.—Tyler 2005, no pet.).

          Therefore, assuming without deciding
that the protections of article I, section 10 apply to a juvenile offender in
any instance, we hold that the right of confrontation under article I, section
10 does not apply to the disposition phase of a juvenile delinquency proceeding
just as we have previously determined that the Sixth Amendment right of
confrontation does not apply.

 

Application

          Under Morrissey and Gagnon,
the trial court must balance the defendant’s interest in confronting and
cross-examining an adverse witness with the State’s interest in not having to
produce that witness.  Taylor, 957 S.W.2d at 46; see also United States v. Rondeau, 430 F.3d 44, 48 (1st Cir. 2005); United States v.
Martin, 382 F.3d 840, 844-45 (8th Cir. 2004); Barnes v. Johnson, 184
F.3d 451, 454 (5th Cir. 1999); Rose, 2006 WL 1459803, at *5; Reyes,
853 N.E.2d at 1283; Abd-Rahmaan, 111 P.3d at 1161-62.  Here, the trial
court erred because it failed to conduct this balancing inquiry.  We must determine
whether this error requires reversal.  See In re D.I.B., 988 S.W.2d 753,
758-59 (Tex. 1999).

          According to the Juvenile Justice
Code, “[t]he requirements governing an appeal are as in civil cases
generally.”  Tex. Fam. Code Ann.
§ 56.01(b) (Vernon Supp. 2006).  Most courts which have discussed the
appropriate harm analysis have concluded that the harm analysis applicable in
civil appeals (Rule of Appellate Procedure 44.1) applies to a juvenile
delinquency appeal unless the appellant received a determinate sentence.  See
In re J.H., 150 S.W.3d 477, 485 (Tex. App.—Austin 2004, pet. denied); In
re D.V., 955 S.W.2d 379, 380 (Tex. App.—San Antonio 1997, no pet.); In
re D.Z., 869 S.W.2d 561, 565-66 (Tex. App.—Corpus Christi 1993, writ
denied); but cf. In re L.R., 84 S.W.3d 701, 707 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (expressly declining to decide what harm analysis
applies for a case involving “non-determinate sentencing”).  Because the court
did not impose a determinate sentence, we will apply the harm analysis of Rule
44.1.

          Rule 44.1(a) permits reversal for
error only if the error: “(1) probably caused the rendition of an improper
judgment; or (2) probably prevented the appellant from properly presenting the
case to the court of appeals.”  Tex. R.
App. P. 44.1(a).

          Though the issue has apparently not
been decided in Texas, numerous courts in other jurisdictions have found such
error harmless in cases in which the hearsay evidence was sufficiently
reliable.  See, e.g., United States v. Kelley, 446 F.3d 688, 692 (7th
Cir. 2006) (arresting officer’s testimony and offense report); United States
v. Hall, 419 F.3d 980, 987 (9th Cir. 2005) (“Hall’s interest in excluding
[medical records and statements made for purposes of diagnosis or treatment]
was thus weak”); United States v. Morris, 140 F. App’x 138, 142-43 (11th
Cir. 2005) (per curiam) (not designated for publication) (written report
submitted to probation officer by defendant’s case manager at halfway house
which was admissible as business record); State ex rel. Simpson v. Schwarz,
2002 WI App 7, ¶ 22, 640 N.W.2d 527, ¶ 22 (Wis. Ct. App. 2002) (good cause
requirement “is always met when the evidence offered in lieu of an adverse
witness’s live testimony would be admissible under the Wisconsin Rules of
Evidence”); see also United States v. Aspinall, 389 F.3d 332, 344 (2d
Cir. 2004) (no balancing required where evidence admissible under recognized
hearsay exception); United States v. Redd, 318 F.3d 778, 784-85 (8th
Cir. 2003) (upholding district court’s implicit findings with regard to
balancing test for “documentary hearsay evidence”); Williams v. Johnson,
171 F.3d 300, 306-07 (5th Cir. 1999) (failure to conduct balancing test
harmless because defendant did not dispute parole violation, proved by parole
officer’s affidavit, but rather sought to prove reasons for violation).

          Here, the juvenile probation officer’s
report was admissible in the disposition phase under a statutory exception to
the hearsay rule.  See Tex. Fam.
Code Ann. § 54.04(b) (Vernon Supp. 2006).  Thus, the Legislature has
determined that such reports have some degree of reliability for purposes of
determining the appropriate disposition in a particular case.  In fact, such
reports have been required for the disposition phase of juvenile delinquency
proceedings since at least 1973.[13]  See
Act of May 25, 1973, 63d Leg., R.S., ch. 544, § 1 54.04(b), 1973 Tex. Gen. Laws 1460, 1478.  Our research has disclosed at least one appellate decision
which has addressed the reliability of such reports.  See In re JV-512016,
923 P.2d 880 (Ariz. Ct. App. 1996).  There, the court concluded that the
juvenile court did not abuse its discretion by accepting (1) hearsay statements
regarding extraneous offenses contained in the juvenile probation report and (2)
the juvenile’s admissions to a clinician that he had committed these extraneous
offenses contained in the clinician’s report “as reliable sources of
dispositional fact.”  Id. at 884.

          The report required by section
54.04(b) is very similar to the presentence investigation report required in
most felony cases.  See Tex. Code
Crim. Proc. Ann. art. 42.12, § 9 (Vernon 2006).  Courts have long held
that such reports have sufficient indicia of reliability to aid a court in
determining the appropriate sentence.  See, e.g., United States v.
Marin-Cuevas, 147 F.3d 889, 895 (9th Cir. 1998); United States v.
Montoya-Ortiz, 7 F.3d 1171, 1180 (5th Cir. 1993); People v. Otto, 26
P.3d 1061, 1067-69 (Cal. 2001); State v. Crossman, 1994 Tenn. Crim. App. LEXIS 652, at *14-15 (Tenn. Crim. App. 1994); State v. Caldwell,
454 N.W.2d 13, 18 (Wis. Ct. App. 1990); see also Fryer v. State, 68
S.W.3d 628, 630-33 (Tex. Crim. App. 2002) (approving trial court’s
consideration of punishment recommendation by victim contained in PSI); Brown
v. State, 478 S.W.2d 550, 551 (Tex. Crim. App. 1972) (“To suggest that the
judge should not use the information in the probation report because it
contains ‘hearsay statements’ is to deny the obvious purpose of the statute.”).

          Finally, we note that numerous courts
have found no due process violation arising from a trial court’s consideration
of a PSI report so long as the defendant is given a reasonable opportunity to
review the report before the hearing and the opportunity to dispute the
accuracy of information in the report and present controverting evidence.  See
 United States v. Inglesi, 988 F.2d 500, 502 (4th Cir. 1993); United States v. Musa, 946 F.2d 1297, 1306-08 (7th Cir. 1991); see also
Tex. Code Crim. Proc. Ann. art.
42.12, § 9(d), (e); DuBose v. State, 977 S.W.2d 877, 880-81 (Tex. App.—Beaumont 1998, no pet.) (discussing defendant’s burden to dispute accuracy of
information in PSI); Garcia v. State, 930 S.W.2d 621, 623-24 (Tex. App.—Tyler 1996, no pet.) (same); Hernandez v. State, 900 S.W.2d 835, 839 (Tex. App.—Corpus Christi 1995, no pet.) (same); Stancliff v. State, 852 S.W.2d 639,
641 (Tex. App.—Houston [14th Dist.] 1993, pet. ref’d) (same), overruled on
other grounds by Whitelaw v. State, 29 S.W.3d 129 (Tex. Crim. App. 2000).

          Section 54.04(b) requires a juvenile
court to provide counsel for the child with access to any reports the court
will consider before the disposition hearing.  Tex. Fam. Code Ann. § 54.04(b).  To exercise the limited
right of confrontation we have recognized herein, a juvenile may subpoena any
necessary witnesses to challenge the accuracy of any information contained in
any reports to be offered under section 54.04(b).  See In re M.R., 5
S.W.3d 879, 881-82 & n.3 (Tex. App.—San Antonio 1999, pet. denied)
(describing limited right of confrontation available for transfer/release
hearing under section 54.11 of the Juvenile Justice Code).

Conclusion

          The juvenile probation officer’s
report admitted during the disposition phase of M.P.’s trial contains
sufficient indicia of reliability to allow us to conclude that the court’s
failure to conduct the balancing test required for the admission of hearsay
evidence without violating the limited due process right of confrontation
described in Morrissey and Gagnon did not “probably cause the
rendition of an improper judgment.”  See Kelley, 446 F.3d at 692; Hall,
419 F.3d at 987; Morris, 140 F. App’x at 142-43; Schwarz, 2002 WI
App 7, ¶ 22, 640 N.W.2d 527, ¶ 22; see also Aspinall, 389 F.3d at 344.

Therefore, we overrule M.P.’s sole issue and
affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray issuing a separate opinion)

(Justice
Vance dissenting)

Affirmed

Opinion delivered and
filed February 7, 2007

[CV06]









[1]
          The report itself is nine pages,
excluding the cover page.  There are about ninety pages of supporting
documentation appended to the report.  “Over thirty” referrals appears to be a
significant understatement.  “Over sixty” would be more accurate.





[2]
          Rule of Evidence 103(a)(1),
promulgated by the Supreme Court in 1982 for civil cases, was identical to the
quoted portion of the present Rule 103(a)(1).  See Tex. R. Evid. 103(a)(1), 641-642 S.W.2d
(Tex. Cases) xxxvi (1982, amended 1988).

 





[3]
          A similar rule applies in criminal
appeals.

 

The trial court need never sort through
challenged evidence in order to segregate the admissible from the excludable,
nor is the trial court required to admit only the former part or exclude only
the latter part.  If evidence is offered and challenged which contains some of
each, the trial court may safely admit it all or exclude it all, and the losing
party, no matter who he is, will be made to suffer on appeal the consequences
of his insufficiently specific offer or objection.

 

Barnes v. State,
876 S.W.2d 316, 329 (Tex. Crim. App. 1994) (quoting Jones v. State, 843
S.W.2d 487, 492 (Tex. Crim. App. 1992)).





[4]
          The eight foundational decisions in chronological order: (1) Haley
v. Ohio, 332 U.S. 596, 601, 68 S. Ct. 302, 304, 92 L. Ed. 224 (1948)
(coerced confession cannot be used against juvenile); (2) Kent v. United
States, 383 U.S. 541, 557, 86 S. Ct. 1045, 1055, 16 L. Ed. 2d 84 (1966)
(juvenile entitled to procedural protections in transfer hearing); (3) In re
Gault, 387 U.S. 1, 31-55, 87 S. Ct. 1428, 1445-58, 18 L. Ed. 2d 527 (1967)
(juvenile has due process rights of notice, counsel, confrontation,
cross-examination, and privilege against self-incrimination); (4) In re
Winship, 397 U.S. 358, 368, 90 S. Ct. 1068, 1075, 25 L. Ed. 2d 368 (1970)
(State must prove allegation of delinquent conduct beyond a reasonable doubt);
(5) McKeiver v. Pennsylvania, 403 U.S. 528, 545, 91 S. Ct. 1976, 1986,
29 L. Ed. 2d 647 (1971) (juvenile has no constitutional right to jury trial);
(6) Breed v. Jones, 421 U.S. 519, 528-29, 95 S. Ct. 1779, 1785, 44 L.
Ed. 2d 346 (1975) (double jeopardy protections apply to juveniles); (7) Schall
v. Martin, 467 U.S. 253, 281, 104 S. Ct. 2403, 2419, 81 L. Ed. 2d 207
(1984) (pretrial detention of juvenile does not violate due process); (8) New
Jersey v. T.L.O., 469 U.S. 325, 341-42, 105 S. Ct. 733, 742-43, 83 L. Ed.
2d 720 (1985) (Fourth Amendment does not require probable cause to justify
school search).





[5]
          In Hidalgo, the Court of
Criminal Appeals addressed a juvenile’s Sixth Amendment right to counsel in
connection with a court-ordered psychological examination under section
54.02(d) of the Juvenile Justice Code.  See Hidalgo v. State, 983 S.W.2d
746, 748 (Tex. Crim. App. 1999) (citing Tex.
Fam. Code Ann. § 54.02(d)).





[6]
          In Lewis, the Supreme
Court was quoting the High Court of Errors and Appeals of Mississippi.  See Lewis v. United States,
146 U.S. 370, 374-75, 13 S. Ct. 136, 137, 36 L. Ed. 1011 (1892) (quoting Dyson
v. State, 26 Miss. 362, 1853 WL 2394, at *15 (Miss. Err. & App. 1853)).

 





[7]
          See, e.g., Russeau v. State,
171 S.W.3d 871, 880-81 (Tex. Crim. App. 2005), cert. denied, ___ U.S. ___, 126 S. Ct. 2982, 165 L. Ed. 2d 989 (2006); Stringer v. State, 196 S.W.3d 249,
251-52 (Tex. App.—Fort Worth 2006, pet. granted); Nunes v. State, No.
05-04-1741-CR, 2006 Tex. App. LEXIS 2301, at *20 (Tex. App.—Dallas Mar. 27,
2006, pet. ref’d) (not designated for publication); Smith v. State, No.
03-05-399-CR, 2006 Tex. App. LEXIS 2062, at *9-12 (Tex. App.—Austin Mar. 16,
2006, pet. ref’d) (not designated for publication); Ford v. State, 179
S.W.3d 203, 208-09 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d), cert.
denied, ___ U.S. ___, 127 S.Ct. 281, 166 L. Ed. 2d 215 (2006); Barela v.
State, No. 08-02-492-CR, 2004 Tex. App. LEXIS 8802, at *13-20 (Tex. App.—El
Paso Sept. 30, 2004) (not designated for publication), aff’d on other
grounds, 180 S.W.3d 145 (Tex. Crim. App. 2005); Salazar v. State, 31
S.W.3d 726, 728-29 (Tex. App.—Corpus Christi 2000), rev’d on other grounds,
86 S.W.3d 640 (Tex. Crim. App. 2002).

 





[8]
          See
 United States v. Beydoun, 469 F.3d 102,
108 (5th Cir. 2006); United States v. Bustamante, 454 F.3d 1200, 1202-03
(10th Cir. 2006); United States v. Littlesun, 444 F.3d 1196, 1199-1201
(9th Cir.), cert. denied, ___ U.S. ___, 127 S. Ct. 248, 166 L. Ed. 2d 149
(2006); United States v. Brown, 430 F.3d 942, 944 (8th Cir. 2005); United
States v. Cantellano, 430 F.3d 1142, 1146 (11th Cir. 2005), cert. denied,
___ U.S. ___, 126 S. Ct. 1604, 164 L. Ed. 2d 325 (2006); United States v.
Kirby, 418 F.3d 621, 627-28 (6th Cir. 2005); United States v. Roche,
415 F.3d 614, 618 (7th Cir.), cert. denied, ___ U.S. ___, 126 S. Ct. 671,
163 L. Ed. 2d 541 (2005); United States v. Luciano, 414 F.3d 174, 179
(1st Cir. 2005); United States v. Martinez, 413 F.3d 239, 242-44 (2d
Cir. 2005), cert. denied, ___ U.S. ___, 126 S. Ct. 1086, 163 L. Ed. 2d 902
(2006); see also United States v. Statts, 189 F. App’x 237, 238 (4th
Cir. 2006) (per curiam) (not designated for publication); United States v.
Cabbagestalk, 184 F. App’x 191, 195-96 (3d Cir. 2006) (not designated for
publication).

 





[9]
          See
People v. Arbuckle, 150 Cal. Rptr. 778,
781 (Cal. 1978); People v. Vensor, 116 P.3d 1240, 1243 (Colo. Ct. App.
2005), cert. granted, 2005 Colo. LEXIS 715 (Colo. Aug. 8, 2005); State
v. Henderson, 2006 Conn. Super. LEXIS 2395, at *36 n.31 (Conn. Super. Ct. 2004) (not designated for publication); Sivak v. State, 731 P.2d 192, 211 (Idaho 1986); Commonwealth v. Wilcox, 841 N.E.2d 1240, 1248 (Mass. 2006); Holland v. State, 93-DP-00494-SCT, ¶ 48, 705 So. 2d 307, 328 (Miss. 1997); State v. Moore, 2006-Ohio-816, ¶ 8, 2006 Ohio App. LEXIS 732, at *4
(Ohio Ct. App. 2006); McDonald v. Belleque,
138 P.3d 895, 897 (Or. Ct. App.), pet. denied, 143 P.3d 544 (Or. 2006)
(unpublished table decision); Moses v. Commonwealth, 498 S.E.2d
451, 455 (Va. Ct. App. 1998); State v. Peters, 2000 WI App 154, ¶ 11
n.10, 615 N.W.2d 655, 659 n.10 (Wis. Ct. App. 2000), rev’d on other grounds,
2001 WI 74, 628 N.W.2d 797 (Wis. 2001).

 





[10]             See Cockerham v. State, 933 P.2d 537, 539 n.10 (Alaska 1997)
(existence of right of confrontation at sentencing “is debatable”); State v.
Berry, 168 S.W.3d 527, 539-40 (Mo. Ct. App. 2005) (“There is ample doubt
and confusion about the application of the Sixth Amendment in this context.”); Ledbetter
v. State, 933 P.2d 880, 895 (Okla. Crim. App. 1997) (“Application of the
Confrontation Clause to punishment proceedings in capital cases is not clear”);
State v. Stephenson, 195 S.W.3d 574, 590-91 (Tenn. 2006) (noting that
federal courts hold that right of confrontation does not apply at sentencing,
but not expressly taking that position).





[11]
         There are numerous findings which
may affect a juvenile’s disposition in some manner, but such findings will not
alter the applicable “punishment range.”  See, e.g., Tex. Fam. Code Ann. § 54.04(g) (Vernon
Supp. 2006) (deadly weapon finding), § 54.0406 (Vernon 2002) (finding that
juvenile possessed, used, or exhibited handgun); § 54.041(b) (Vernon Supp.
2006) (restitution), § 54.042 (Vernon Supp. 2006) (license suspension); see
also Harris v. United States, 536 U.S. 545, 568-69, 122 S. Ct. 2406, 2420,
153 L. Ed. 2d 524 (2002) (finding which increases minimum punishment need not
be submitted to jury under Apprendi); Surredin, 165 S.W.3d 751,
753 n.2 (Tex. App.—San Antonio 2005, no pet.) (same).

 





[12]
            Habitual felony conduct is conduct violating a penal law of the
grade of felony, other than a state jail felony, if:

 

(1) the
child who engaged in the conduct has at least two previous final adjudications
as having engaged in delinquent conduct violating a penal law of the grade of
felony;

 

(2) the
second previous final adjudication is for conduct that occurred after the date
the first previous adjudication became final; and

 

(3) all
appeals relating to the previous adjudications considered under Subdivisions
(1) and (2) have been exhausted.

 

Tex. Fam. Code Ann. § 51.031(a) (Vernon 2002).

                





[13]
         Juvenile social histories were
first expressly required by statute in 1967 for hearings to transfer a juvenile
delinquency proceeding to another county or to waive juvenile court
jurisdiction and transfer the child to an adult criminal court in felony cases
where the child was 15 or older.  See Act of May 24, 1967, 60th Leg.,
R.S., ch. 475, § 6(d), 1967 Tex. Gen. Laws 1082, 1083 (repealed 1973).